# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**PRISCILLA S.,**

     **Plaintiff,**

**vs.**                                                     **CIVIL ACTION NO. 3:24-CV-00561**

**LELAND DUDEK, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security (hereinafter "Commissioner") denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered October 10, 2024 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her complaint (ECF No. 10) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 11).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 10), **DENY** the Defendant's request to affirm the final decision (ECF No. 11); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Acting Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*:

1

**Procedural History**

The Plaintiff protectively filed her application for DIB on April 3, 2021 alleging disability beginning May 17, 2021 because of TMJ, cirrhosis, arthritis, migraines, gastroparesis, "palanotal abscesses", GERD, fibromyalgia, osteoarthritis, asthma, hypothyroidism, depression, anxiety, esophageal issues, hot flashes, night sweats, high blood pressure, high cholesterol, overactive bladder, "broken pelvis in two places", "broken tailbone three times", two bulging discs in lower back, nerve issues in back, swelling in ankles and feet, lumbar back pain, cornea damage from dry eye, and the beginnings of cataracts. (Tr. at 17, 227) Her claim was initially denied on January 13, 2022 (Tr. at 17, 73-81) and again upon reconsideration on March 13, 2023 (Tr. at 17, 83-91). Thereafter, she filed a written request for hearing on April 22, 2023 (Tr. at 114-115).

An administrative hearing was held on February 6, 2024 before the Honorable Joanna Papazekos, Administrative Law Judge ("ALJ"). (Tr. at 40-71) On April 24, 2024, the ALJ entered an unfavorable decision. (Tr. at 14-39) On April 24, and May 8, 2024, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 186-188, 189-191) The ALJ's decision became the final decision of the Commissioner on August 15, 2024 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On May 7, 2023, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 7) Subsequently, the Plaintiff filed her Brief in support her complaint (ECF No. 10), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 11); finally, the Plaintiff filed her Reply Brief (ECF No. 12). Consequently, this matter is fully briefed and ready for resolution.

**The Plaintiff's Background**

The record shows that the Plaintiff was 57 years old as of the alleged onset date, therefore defined as a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 60) She has a bachelor's degree in art education, and last worked as an economic service worker, taking applications for SNAP benefits, as an early head start educator, and received a subsidy for caring for her disabled adult daughter (Tr. at 32, 47-49).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found the Plaintiff met insured status requirements through December 31, 2026. (Tr. at 19, Finding No. 1) Next, the ALJ determined that the Plaintiff satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of May 17, 2021. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff has the following severe impairments: psoriatic arthritis; tendonitis; allergies/asthma; myofascial pain syndrome/fibromyalgia; lumbar spondylosis; and osteoarthritis. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23, Finding No. 4) The ALJ then found that the Plaintiff has the residual functional capacity ("RFC") to perform light work, except:

> She requires at sit stand option allowing for changing position briefly, no more [*sic*] one to two minutes at a time, from seated to upright and vice versa. She is limited to no more than frequent crouching, crawling, balancing, stooping, kneeling, and climbing of steps and ramps, and no climbing of ropes scaffolds and ladders. She can have no exposure to fumes, dust, and odors. She can have no exposure to hazards, including unprotected heights and inherently dangerous moving mechanical parts. She can perform work that does not require production rate paced work, more specifically, no work that demands a specific production rate or hourly quota.

(Tr. at 25, Finding No. 5)

At step four, the ALJ found that the Plaintiff was capable of performing her past relevant work as a preschool teacher and eligibility worker. (Tr. at 32, Finding No. 6) Finally, the ALJ determined the Plaintiff has not been under a disability from May 17, 2021 through the date of the decision. (Tr. at 33, Finding No. 7)

**The Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff alleges that the ALJ's RFC assessment is flawed because she failed to assess the total limiting effects of the Plaintiff's impairments by not appropriately evaluating her self-described limitations complaints, relying on the lack of objective evidence, contrary to the Fourth Circuit's holding in Arakas v. SSA, 983 F.3d 83 (4th Cir. 2020) and Social Security Ruling (SSR) 16-3p; additionally, the Plaintiff's self-described limitations are consistent with the evidence and the ALJ undermined the Plaintiff's self-described limitations by failing to properly consider the other evidence of record – that is, the factors enumerated under 20 C.F.R. § 404.1529 – by improperly increasing the Plaintiff's burden of proof to support her subjective symptoms. (ECF No. 10. at 3-14) Because of all these errors, the Plaintiff asks this Court to remand for further proceedings. (Id. at 14)

In response, the Commissioner states that the ALJ appropriately evaluated the Plaintiff's subjective complaints in compliance with legal standards when assessing her RFC, including the Plaintiff's self-described limitations against the entire record, which included the medical and other evidence. (ECF No. 11 at 7-9) The Commissioner argues the ALJ did not improperly increase the Plaintiff's burden of proof, as the evidence did not support the degree of limitations she alleged and the ALJ discussed the Plaintiff's activities of daily living as well as the Plaintiff's response to medication, treatment and other measures – all demonstrating the Plaintiff's condition was not disabling. (Id. at 10-12). The Commissioner argues the Plaintiff essentially asks the Court to impermissibly re-weigh the evidence as the final decision is supported by substantial evidence. (Id. at 13)

In reply, the Plaintiff argues the Commissioner understates the application of Arakas, and

that the Fourth Circuit has emphasized that a claimant may rely on subjective symptoms alone in other physical impairments, including musculoskeletal and rheumatological impairments, not just fibromyalgia or other impairments that do not typically manifest in objective clinical findings. (ECF No. 12 at 1-2) The Plaintiff points out that the ALJ's discrediting her allegations is further compromised given that the ALJ did not assess the Plaintiff's complaints regarding her fibromyalgia separately from her other physical impairments; this makes it more difficult for the Court to discern whether the ALJ improperly relied on objective findings, even as just one factor, in discounting the Plaintiff's alleged symptoms. (Id. at 2-3) These errors warrant remand. (Id. at 4)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Medical Records:

The Plaintiff has a longstanding diagnosis of psoriatic arthritis, for which she has taken biologic medications (Tr. at 578; *see also* Tr. at 474-634, 681-750, 1024-34, 1487-1508). She typically reported good control with Xeljanz, and examinations reveal few related positive findings, with some arthritis in the finger joints (*see id.*, Tr. at 648, 1015). More recently, the Plaintiff requested a change in medication as she reported less relief of hand and foot pain, though exams continued to be stable with few signs of active disease (*see* Tr. at 1487-1508).

The Plaintiff has a long history of treatment for her low back. An MRI from November

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for the Plaintiff's physical impairments and their associated symptoms, including, but not limited to pain.

2020 indicated a disc protrusion at the L2-L3 level, as well as mild to moderate foraminal narrowing at multiple levels (Tr. at 399). An x-ray in February 2022 indicated lower lumbar facet osteoarthritis and normal disc spaces (Tr. at 695). Examinations by her rheumatologists indicate no spinal abnormalities (*see*, *e.g.*, Tr. at 497, 537, 599, 685-686, 1026). At a consultative evaluation in November 2021, wherein she reported significant sharp low back pain and difficulty with prolonged sitting or standing, and no treatment, the Plaintiff was able to heel and toe walk, tandem gait, and squat without difficulty; and she had a negative straight leg raise and normal sensation, with a diminished left patellar reflex (Tr. 648-649). At a second consultative evaluation in January 2023, the Plaintiff stated that she took Tylenol for pain; she gave poor effort on special maneuvers, would not lie down to test straight leg raising, and had a normal gait (Tr. at 1016-1019). The Plaintiff has also undergone steroid injections of her lumbar spine, as well as bilateral rhizotomy treatments; providers have also recommended low-impact aerobic exercise (*see* Tr. at 1166-1279). Examinations by her provider indicate full strength, grossly intact reflexes, some pain with range of motion, and scattered trigger points (*see* Tr. at 1203, 1219).

In 2023, the Plaintiff also reported neck pain and had injections in her paraspinal muscles (*see* Tr. at 1270). Nerve testing did not indicate any radiculopathy and was consistent with a right-sided median neuropathy (Tr. at 1370, 1377; *see also* Tr. at 621 (August 2021 testing with similar findings)). An x-ray of the Plaintiff's cervical spine in November 2023 indicated degenerative changes, not otherwise specified by the record (Tr. at 1376).

The Plaintiff has received podiatry follow up related to left ankle and heel complaints, which were assessed as a plantar fasciitis with secondary tendonitis (Tr. at 485-493, 611-613, 689-694, 709-711, 719-720 724-725). In July 2021, x-rays were normal (Tr. at 488-489). MRIs

indicated plantar fasciopathy and partial fatty atrophy of an abductor muscle (Tr. at 747-750). The Plaintiff reported an improvement in her symptoms with use of a brace (Tr. at 611, 689, 719), and she stopped following up with her podiatrist 2022, with ongoing use of the brace as needed (Tr. at 1016).

In May 2022, the Plaintiff presented to an orthopedist with complaints of eight months of right shoulder pain; an MRI indicated a full-thickness tear of the supraspinatus tendon (Tr. at 970). Having failed a home exercise program, the Plaintiff had a repair of a right rotator cuff tear in June 2022 (Tr. at 911-975). At a six-month follow up, the Plaintiff had findings consistent with a carpal tunnel syndrome (Tr. at 1390-9131). At a one-year follow up, she reported that she was doing well with her right shoulder symptoms, but had other unrelated right upper extremity symptoms; she was recommended for a course of physical therapy to continue to strengthen her shoulder, as well as separate follow up for what appeared to be tennis elbow symptoms (Tr. at 1388-1389).

In May 2020, the Plaintiff discussed fibromyalgia with her rheumatologist, who suggested that she consider related medication management from her primary care provider (Tr. at 578-583; *see also* Tr. at 570). At rheumatology follow ups, the Plaintiff complained of muscle tenderness, but examinations did not indicate any spinal or proximal muscle tenderness (*see*, *e.g.*, Tr. at 556, 570, 580-582, 599-600, 608-609). Primary care records indicate that she was taking Effexor for depression and did not have separate treatment (Tr. at 831, 1406); in late 2023, she was recommended to start gabapentin by her orthopedist but stated she was unable to tolerate it (Tr. at 1381, 1384).

<u>Prior Administrative Medical Findings:</u>

At both the initial and reconsideration levels of review, State agency medical consultants

opined the Plaintiff was limited to light work with postural restrictions. (Tr. at 31, 73-81, 83-91)

    The Plaintiff's Self-Described Limitations:

In the July 2021 and December 2022 "Function Reports" she completed in connection with her claim for benefits, the Plaintiff reported that her pain makes it difficult to find a comfortable position. (Tr. at 241) She is unable to get up/down to take a bath so she uses a walk-in shower with a shower chair. (Tr. at 241, 295) She must sit down to rest after showering before she is able to get dressed. (Tr. at 295) There are times when she goes days without bathing. (Id.) She must hold on to something and use a higher seat so that she can get up/down when using the toilet. (Tr. at 241, 296) Her conditions affect her sleep so she must nap during the day. (Tr. at 295) She must sit down or lean on something to get dressed. (Id.) She has difficulty washing, brushing, and drying her hair. (Id.) She has difficulty holding/opening a shampoo bottle, grasping a razor, and opening jars/bottles/packages. (Id.) Her conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands. (Tr. at 245, 294, 301-302) She avoids lifting anything over 5 pounds; has difficulty sitting for long periods; and is unable to stand longer than 5 minutes or walk more than 1-5 minutes. (Tr. at 245, 301-302) She requires frequent rest breaks. (Tr. at 302) She completed a Pain Questionnaire in April 2022 and reported that she experiences pain throughout her body. (Tr. at 280) She described her pain as aching, cramping, dull, sharp, sore, stabbing, stinging, pins/needles, and throbbing. (Id.) She uses heat/ice and rest to help relieve her pain. (Tr. at 281)

**The Administrative Hearing:**

    The Plaintiff's Testimony:

 The Plaintiff testified that her conditions make it difficult for her to function on most days,

11

even at home. (Tr. at 50) She experiences pain in numerous areas of her body including her entire spine, right shoulder/arm, left ankle, knees, and feet. (Tr. at 51, 53-56) Her toes are curled which makes it difficult for her to walk. (Tr. at 53) Her right hand/fingers go numb, and she is unable to lift/grasp objects. (Id.) She described her pain as sharp, dull, and aching. (Tr. at 54-56) She uses heat/ice to help her pain. (Tr. at 51, 54) She has difficulty dressing. (Tr. at 57) She wears slip-on shoes because there are times when she cannot bend over to tie her shoes. (Id.) She has a walk-in shower with a seat and must sit down about halfway through her shower. (Tr. at 58) Her pain increases if she lifts more than 2-3 pounds. (Tr. at 59) She can stand for 2-3 minutes and walk approximately a city block before needing to stop and take a break. (Id.)

The Plaintiff explained that she had to quit work at the state when her adult daughter, who is disabled, broke her foot, forcing her to take family medical leave, in addition to her medical issues becoming worse. (Tr. at 62, 70) Her daughter has a caregiver who comes to the house Monday through Friday from 8:00 am to 2:30 pm. (Tr. at 60) The Plaintiff testified that she stays in bed the majority of the time, and her daughter usually naps while the Plaintiff is in bed; she explained that her daughter has a seizure disorder and her medication makes her very tired. (Tr. at 60-61)

The Vocational Expert's Testimony:

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the vocational expert testified that the individual could perform the Plaintiff's past relevant work as an eligibility worker and as a preschool teacher as performed per the Dictionary of Occupational Titles (DOT), but not as the Plaintiff performed it (Tr. at 65-66). The vocational expert also opined that an individual off task for 30 percent of the

workday would be unable to maintain employment. (Tr. at 67)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

<u>The RFC Assessment:</u>

As noted *supra*, the Plaintiff alleges the ALJ incorrectly assessed a light RFC by failing to consider the limiting effects from her physical impairments. The RFC determination is the most a claimant can do despite her restrictions or limitations, and is solely an administrative assessment made by the adjudicator based on all the relevant evidence in the record. <u>See</u> Social Security Ruling

13

(SSR) 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed. Appx. 226, 230-231 (4th Cir. 2011); see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); Gilmore v. Kijakazi, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to fashion an RFC that exactly matched Plaintiff's *testimony* or the opinion evidence."), *report and recommendation adopted*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022)(*emphasis* added).

In this case, the ALJ began her RFC analysis with a discussion of the Plaintiff's hearing testimony (Tr. at 26), summarized *supra*, and then determined that the Plaintiff's allegations of her symptoms were not fully substantiated by the medical of record (Id.). The ALJ noted the medical records documenting ongoing treatment for the Plaintiff's psoriatic arthritis, osteoarthritis, tendonitis, lumbar spondylosis, allergies/asthma, and myofascial pain syndrome/fibromyalgia (Tr. at 26-29). Of relevance here, and as observed by the parties, the ALJ discussed the treatment notes throughout the relevant period, summarized *supra*, and while they reflected regular complaints of joint, neck, back pain, left heel and ankle pain with generally mild objective examination and diagnostic imagining findings (Id.). The ALJ then considered the Plaintiff's alleged activities of daily living, as supported by the Plaintiff's hearing testimony that: she lives with her disabled adult daughter; has difficulty driving due to her right arm; has difficulty with prolonged sitting, bending over to tie her shoes; uses a shower chair; does most of her shopping online; shops in stores for up to fifteen minutes; and has difficulty focusing on TV and reading. (Tr. at 29) The ALJ noted the Plaintiff's testimony that her daughter requires verbal prompting and supervision, and that she is unable to cook or clean, but has a person that comes to her house five days a week for this, and

14

who also performs the household chores. (Id.) The ALJ observed that the Plaintiff reported in January 2023 during a mental status examination that she watches TV, takes naps, reads, and does not perform household chores, talks on the phone regularly, manages her own finances, but never goes outside. (Tr. at 30, 980) The ALJ considered the Plaintiff's function report, noting the Plaintiff reported caring for her daughter, including transportation, preparing meals, and shopping, and that the Plaintiff prepares her own meals daily, takes naps, watches TV, reads, spends time with others in person, pays bills, and manages her own finances, but has difficulty with personal care, uses a shower chair, drives short distances, and shops in stores once a month with difficulty. (Tr. at 30, 306-317) From this evidence, the ALJ determined that the Plaintiff's daily living, which includes taking care of her disabled daughter, driving and shopping are not entirely consistent with the Plaintiff's reported limitations. (Tr. at 30)

The ALJ then returned to the medical records to highlight that they are not consistent with the Plaintiff's alleged functional limitations, beginning with the diagnostic imaging reports concerning the Plaintiff's musculoskeletal impairments which noted generally mild degenerative changes (Tr. at 30, 399, 695, 696, 726, 748).[2] The ALJ observed that the records did not show recurring hospitalizations for the Plaintiff's back pain, respiratory problems, or joint pains. (Tr. at 30) The ALJ noted that regarding the Plaintiff's back pain, the medical records indicate that she responded well to trigger point injections and rhizotomies (Tr. at 30, 782, 1169, 1203, 1257).[3] The ALJ observed that the Plaintiff's rheumatology records reflect no severe or recurring flare ups, and

---

[2] The ALJ referenced an MRI of the Plaintiff's lumbar spine from November 25, 2020, radiology reports of the Plaintiff's lumbar spine with bending and her right shoulder from February 1, 2022, a radiology report of the Plaintiff's right knee from November 29, 2021, and an MRI of the Plaintiff's left ankle from February 15, 2022.

[3] The ALJ referenced a follow up visits with Joseph DeLapa, M.D., from the Marshall Senior Pain Management Clinic, dated January 19, 2022, October 3, 2023, January 11, 2023, and a procedure note from Dr. DeLapa dated November 2, 2022 for a lumbar facet rhizotomy.

no persistent joint tenderness or swelling with treatment (Tr. at 30, 982-1009, 1487-1508).[4] The ALJ observed that the medical record showed that the Plaintiff was not taking gabapentin or Lyrica for fibromyalgia (Tr. at 30, 1383).[5] The ALJ revisited the Plaintiff's testimony, noting that the Plaintiff testified she takes over the counter Tylenol, and uses a heating pad and ice for pain, finding that inconsistent with the severity of pain and functional limitation alleged. (Tr. at 30) The ALJ again acknowledged that while treatment notes include regular complaints of joint and back pain, examinations generally reflect mild objective findings, no acute distress, no persistent respiratory symptoms, occasional musculoskeletal tenderness, no persistent deficits in range of motion, full strength, intact sensation and reflexes, intact coordination, no lower extremity swelling, a normal gait, negative straight leg raise testing, and no use of a cane or walker (despite a walker having been ordered from early 2022) at examinations or any medical need for an assistive device. (Tr. at 30, 485, 491, 497, 599, 648-649, 685-686, 689, 715-716, 730-731, 770, 964, 971, 984, 990, 996, 1026, 1169, 1281, 1284, 1299, 1306, 1311, 1316, 1319-1320, 1332, 1370, 1378, 1388-1389, 1396, 1507, 770, 945) The ALJ also observed that treatment notes do not reflect complaints of reported need to lay down for most of the day for 20-25 days a month. (Tr. at 30)

In sum, to accommodate the Plaintiff's back and joint pains with intermittent deficits in range of motion, the ALJ fashioned the resulting RFC, *supra*, notwithstanding her determination that diagnostic imaging, the Plaintiff's course of treatment, the Plaintiff's positive response to treatment, and generally mild objective medical findings are inconsistent with the degree of

---

[4] These records are dated from April 7, 2022 through November 21, 2023.

[5] This is from an orthopedic office visit dated November 7, 2023 regarding the Plaintiff's complaints of pain and numbness in her right arm.

functional limitation alleged. (Tr. a 30-31)

Evaluating Subjective Symptoms:

To the extent that the Plaintiff alleges the ALJ discounted the Plaintiff's allegations based on the objective examination findings, thus " 'improperly increased her burden of proof' " contrary to the holding in <u>Arakas</u> (ECF No. 10 at 14), the Court notes the following: SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. <u>See</u>, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to

work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

The Court further recognizes that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir.

2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

As noted by the Plaintiff, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

As discussed *supra*, the ALJ acknowledged the Plaintiff's alleged symptomology and the functional limitations caused by her impairments, and after properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not fully substantiated by the medical signs, laboratory findings and other evidence

of record . . . these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Tr. at 26) As noted above, the ALJ then referred to the medical record, compared it to the Plaintiff's allegations as set forth in her application for benefits and hearing testimony, and ultimately determined the medical records are not consistent with the degree of functional limitations as alleged. (Tr. at 26-31)

The undersigned is persuaded by the jurisprudence set forth in <u>Treadway v. Commissioner of Social Security</u>, 2024 WL 4341325 (W.D.N.C. Sept. 27, 2024) and its progeny to the extent that the ALJ herein did not *separately* discuss the Plaintiff's subjective complaints as they related to fibromyalgia, and instead, only relied upon the objective medical evidence to discount her symptoms concerning their severity, persistence, and limiting effects with regard to *all* of the Plaintiff's symptoms concerning *all* of her impairments. While the undersigned appreciates that an adjudicator is solely responsible for reconciling the conflicting evidence consisting of the Plaintiff's allegations of pain and other symptoms with the objective and other evidence of record, the foregoing shows that the ALJ in this case appears to have relied primarily on the lack of objective evidence to discount the Plaintiff's subjective complaints, and specifically with regard to the Plaintiff's complaints stemming from fibromyalgia. To that extent, the undersigned **FINDS** that because the ALJ did not analyze the Plaintiff's myofascial pain/fibromyalgia separately from her other conditions, accordingly, the ALJ's subjective symptoms analysis is not supported by substantial evidence. In short, the ALJ's evaluation of the Plaintiff's self-described limitations would have benefitted from a more robust analysis of the overall evidence of record – and not just limited portions of the objective medical record. To that extent, the ALJ ran afoul of what <u>Araxas</u>

and its progeny sought to prevent: relying primarily on the objective evidence to find the Plaintiff's subjective complaints are inconsistent, and without sufficient consideration of the evidence that do support his claims. <u>Arakas</u>, 983 F.3d at 98.

The undersigned further **FINDS** that the final decision denying the Plaintiff's application for disability insurance benefits is not supported by the substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's request for remand (ECF No. 10), **DENY** the Commissioner's request to affirm the decision below (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Acting Commissioner for further administrative proceedings in order for the ALJ to consider not just the objective medical evidence, but also the other evidence of record for a fulsome evaluation of this Plaintiff's self-described limitations, particularly as they concern her severe impairment, myofascial pain syndrome/fibromyalgia.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 27, 2025.



Omar J. Aboulhosn
United States Magistrate Judge